UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INTERMARINE, LLC, | ) |
| Plaintiff | ) |
| v. | ) CASE NO. |
| SPLIETHOFF BEVRACHTINGSKANTOOR B.V., SPLIETHOFF AMERICAS, INC., and KASPER BIHLET, | ) |
| Defendants | ) |

## COMPLAINT

Plaintiff Intermarine, LLC ("Intermarine") complains against defendants, Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet ("Bihlet") as follows:

### I.  PARTIES

1. Plaintiff Intermarine is a Louisiana limited liability company, with its principal place of business in New Orleans, Louisiana. Its sole member is Industrial Maritime Carriers (Bermuda), Ltd., a Bermuda corporation with its principal place of business in Bermuda.

2. Spliethoff Bevrachtingskantoor B.V. ("Spliethoff Amsterdam") is a corporation organized under the laws of the Netherlands, with its principal place of business in Amsterdam, the Netherlands, which engaged in business in the State of Texas at various times relevant hereto.

3. Spliethoff Americas, Inc., ("Spliethoff Americas") is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. On information and belief, Spleithoff Houston is a wholly-owned subsidiary of Spliethoff Amsterdam.

1

4. Defendant Kasper Bihlet is a citizen of Denmark who has been granted authorization to live and work in the United States on a permanent basis, and who is domiciled in Houston, Texas.

## II.     JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 1367. The court has federal question jurisdiction over Claim 1, which arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The court has supplemental jurisdiction over Claims 2 through 11, which are so related to Claim 1 that they form part of the same case or controversy under Article III of the United States Constitution.

6. The Court has personal jurisdiction over each defendant.

7. Venue is proper under 28 U.S.C. § 1391(b)(2) or under 28 U.S.C. § 1391(b)(3). Venue is also proper under the forum selection clause in the Agreement between Bihlet and Intermarine which is attached hereto as Exhibit A.

## III.    FACTUAL ALLEGATIONS

8. Intermarine is a marine logistics and ocean transport provider, engaged in the worldwide transport of specialty cargos, including breakbulk, heavy lift, dry bulk, and project cargos.

9. Intermarine and the Spliethoff defendants are direct competitors in a specialized and highly competitive worldwide market.

10. In August 2012, Intermarine's parent company purchased Scan-Trans Holding A/S ("Scan-Trans"), a Danish project cargo carrier, and thereafter integrated its operations with Intermarine.

11. At the time of said transactions, defendant Bihlet had worked for Scan-Trans for ten years, and was then serving as president of its U.S.-based subsidiary in the Americas. Following the transactions, Bihlet became Intermarine's Vice-President for Worldwide Chartering.

12. On September 27, 2012, Bihlet and Intermarine entered an employment agreement with exclusivity, non-competition, non-disclosure, and non-

2

solicitation provisions ("the Agreement"), which is attached hereto as Exhibit A. Bihlet was to work exclusively for Intermarine during the term of the Agreement. Bihlet would be exposed to and would receive confidential and proprietary business information and trade secrets, which Bihlet would not disclose, communicate or furnish to any other person.  Either party could terminate the Agreement for any reason with ninety (90) days notice.  Intermarine could restrict Bihlet's activities for six months following the termination of his employment, and would pay Bihlet's base salary and medical benefits during such restriction period.

13. During his employment with Scan-Trans and Intermarine, Bihlet was exposed to a significant amount of Scan-Trans/Intermarine's trade secrets and confidential and proprietary business information, including, but not limited to, customer names and lists, pricing for cargos, contract information and details, project leads, history of cargos carried, technical information about vessels and cargos, quotations and responses to requests for proposal, voyage profitability, vessel charter rates, duration and other information, contracts and service agreements with vendors and customers, quality procedures, timing for movement of cargos, technical information about weights, dimensions and stowage of cargos, other cargos moving in certain regions, and port information and operations (collectively "confidential information"). Said confidential information has independent value to Intermarine, is not generally known or ascertainable by its competitors, and is critical to Intermarine's ability to maintain its competitive position in the industry. Intermarine would be at a substantial competitive disadvantage if the confidential and proprietary business information and trade secrets known by Bihlet were disclosed to a competitor.

14. Kyle Branting became employed by Intermarine in 2006, served as Director of Sales, and thereafter as Vice President – Africa from 2012 until April 2013.  During his employment with Intermarine, Branting signed a non-disclosure agreement that obligated him to hold in confidence and not disclose Intermarine's trade secrets and confidential and proprietary business information.  During his employment with Intermarine, Branting was exposed to a significant amount of Scan-Trans/Intermarine's trade secrets and confidential and proprietary business information including, but not limited to customer names and lists, pricing for

3

cargos, contract information and details, project leads, history of cargos carried, technical information about vessels and cargos, quotations and responses to requests for proposal, voyage profitability, vessel charter rates, duration and other information, contracts and service agreements with vendors and customers, quality procedures, timing for movement of cargos, technical information about weights, dimensions and stowage of cargos, other cargos moving in certain regions, and port information and operations (collectively "confidential information"). Said confidential information has independent value to Intermarine, is not generally known or ascertainable by its competitors, and is critical to Intermarine's ability to maintain its competitive position in the industry. Intermarine would be at a substantial competitive disadvantage if the confidential and proprietary business information and trade secrets known by Branting were disclosed to a competitor.

15. Throughout the employment of Bihlet and Branting, Intermarine maintained one or more computers and/or computer systems which were used in or affecting interstate or foreign commerce or communication, access to which is controlled via passwords issued to employees.

16. Intermarine gave Bihlet access to said computer(s) and/or computer systems for the purpose of enabling him to perform his duties as Intermarine's Vice-President for Worldwide Chartering, consistent with the terms and obligations of the Agreement, Exhibit A.

17. Intermarine gave Branting access to said computer(s) and/or computer systems for the purpose of enabling him to perform his duties as Intermarine's Director of Sales and later as Vice President – Africa, consistent with the terms and obligations of his non-disclosure agreement.

18. By no later than January 2013, Spliethoff Amsterdam planned to create a U.S. subsidiary, which was to be located in Houston and which was to compete with Intermarine.  Managerial and executive employees of Spliethoff Amsterdam telephoned, emailed and visited Houston on multiple occasions in 2012 and 2013 in connection with the planned Houston operation.

19. Starting as early as December 2012, Spliethoff Amsterdam undertook efforts to recruit Bihlet and Branting to leave Intermarine and join Spliethoff Amsterdam's soon-to-be-launched U.S. subsidiary.  Managerial and executive

4

employees of Spliethoff Amsterdam telephoned, emailed and visited Houston on multiple occasions in connection with the recruitment of Bihlet and Branting.

20. Bihlet assisted Spliethoff Amsterdam in soliciting Branting to join Spliethoff Amsterdam's planned venture in Houston.

21. On or about March 19, 2013, Bihlet and Branting signed contracts to work for the not-yet-formed subsidiary Spliethoff Americas. Neither had given notice to Intermarine at the time of signing their contracts and continued to work for Intermarine following the signing of their contracts.

22. Managerial and executive employees of Spliethoff Amsterdam and Spliethoff Americas were aware of Bihlet's and Branting's contractual obligations to Intermarine when they signed contracts to work for Spliethoff Americas.

23. On March 28, 2013, Spliethoff Amsterdam incorporated Spliethoff Americas in Texas. (Spliethoff Amsterdam and Spliethoff Americas are sometimes referred to collectively as "Spliethoff").

24. On March 28, 2013, Bihlet submitted his 90 day notice of resignation to Intermarine, creating an effective last day of employment of June 26, 2013. Bihlet told Intermarine that he did not know where he would go to work.

25. Branting resigned from Intermarine effective April 17, 2013.

26. Intermarine continued to provide Bihlet and Branting with confidential information until their resignations in late March and April 2013, including that in early March 2013, Bihlet and Branting both attended a three-day Senior Executive Leadership Meeting in Louisiana, where the executives discussed and developed the company's future strategy and plans.

27. On April 17, 2013, Will Terrill, Intermarine's Vice President, U.S. Flag Services and General Counsel ("Terrill"), wrote Bihlet, acknowledging his notice of resignation and advising that Intermarine would continue to pay Bihlet's base salary and to provide medical benefits under the Agreement, and would also compensate him for his unused annual vacation benefit. Terrill also reiterated that Bihlet's obligations under the non-compete, non-solicit, and non-disclosure provision of the Agreement applied both during and following the expiration of the 90-day notice period, and that Intermarine would not waive any provision of the Agreement.

28. During his exit interview and process of leaving Intermarine, Branting was advised of his confidentiality obligations. Branting did not tell Intermarine where he was going to work.

29. Spliethoff Americas opened its Houston office on May 3, 2013, with Branting as its Vice President – Business Development.

30. Around May 30, 2013, Bihlet asked Intermarine to waive his obligations under the Agreement to allow him to work for Spliethoff. Intermarine responded in writing that it would not waive Bihlet's obligations under the Agreement, including the six (6) month restriction of employment, and would not consent to his going to work for Spliethoff. Intermarine confirmed that it would continue to pay Bihlet's base salary and medical benefits during the restriction period.

31. Bihlet's employment with Intermarine ended on June 26, 2013, but Bihlet was restricted from working for Spliethoff until December 26, 2013. Intermarine paid Bihlet's base salary and medical benefits during the restriction period.

32. Bihlet began to violate the exclusivity, non-compete, non-disclosure, and non-solicitation provisions of the Agreement during his active employment with Intermarine. Bihlet intentionally accessed certain of Intermarine's protected computer(s) for the purpose of obtaining and misappropriating Intermarine's electronically stored information, including its confidential and proprietary business information and trade secrets. Bihlet downloaded and copied and thus obtained substantial amounts of Intermarine's electronically stored information, in order to use said information for the benefit of the Spliethoff defendants. Bihlet provided services to or on behalf of Spliethoff Americas and Spliethoff Amsterdam, both competitors of Intermarine, solicited Intermarine's customers, or assisted Spliethoff in soliciting Intermarine's customers, and disclosed Intermarine's confidential and proprietary business information and trade secrets to Spliethoff, including that Bihlet assisted Spliethoff in bidding on jobs for which Bihlet had prepared bids for Intermarine. Both Spliethoff defendants encouraged and assisted Bihlet in violating these provisions of the Agreement, including repeated specific requests that Bihlet provide Intermarine's confidential and proprietary business information and trade

secrets to Spliethoff, and assist in soliciting Intermarine's customers for Spliethoff. Bihlet acted as Spliethoff's agent in carrying out these activities.

33. Bihlet continued to violate the non-compete, non-disclosure, and non-solicitation provisions of the Agreement during the six (6) month restriction period following the termination of his employment with Intermarine. While still receiving a salary from Intermarine during the restriction period, Bihlet provided services to or on behalf of Spliethoff Americas and Spliethoff Amsterdam, both competitors of Intermarine, solicited Intermarine's customers, or assisted Spliethoff in soliciting Intermarine's customers, and disclosed Intermarine's confidential and proprietary business information and trade secrets to Spliethoff. Both Spliethoff defendants encouraged and assisted Bihlet in violating these provisions of the Agreement, including repeated specific requests that Bihlet provide Intermarine's confidential information to Spliethoff, and assist in soliciting Intermarine's customers. Bihlet acted as Spliethoff's agent in carrying out these activities.

34. Branting also began to violate his non-disclosure agreement during his employment with Intermarine, including intentionally accessing certain of Intermarine's protected computer(s) for the purpose of obtaining and misappropriating Intermarine's electronically stored information, including its confidential and proprietary business information and trade secrets, and disclosing Intermarine's confidential and proprietary business information and trade secrets to Spliethoff. Both Spliethoff defendants and Bihlet encouraged and assisted Branting in violating his non-disclosure agreement. Branting acted as Spliethoff's agent in carrying out these activities.

35. Both Spliethoff defendants were aware of Bihlet's and Branting's contractual obligations to Intermarine, but both Spliethoff defendants solicited Bihlet and Branting to disclose Intermarine's confidential and proprietary business information and trade secrets.

36. Both Spliethoff defendants used Intermarine's confidential and proprietary business information and trade secrets which they acquired illegally from Bihlet and Branting to target Intermarine's customers and prospective customers, including specific contracts held by Intermarine and carriage opportunities that had been presented specifically to Intermarine and were not

7

known or circulated within the market, and prepared Spliethoff's bids on potential jobs for Intermarine customers and prospective customers using Intermarine's pricing, terms and conditions and other confidential and proprietary business information and trade secrets.

37. Bihlet and Branting, as employees and officers of Spliethoff Americas, have undertaken these activities with the intention of depriving Intermarine of its rights to its own confidential and proprietary business information and trade secrets and depriving Intermarine of its continued relationships with its customers.

38. These illegal and dishonest activities of Bihlet, Spliethoff Americas, and Spliethoff Amsterdam have damaged and continue to damage Intermarine by interfering with its existing and prospective customer relationships and with its protection and use of its confidential and proprietary business information and trade secrets, including information stored electronically on protected computer(s), and by other actions. Intermarine seeks damages and injunctive relief against all three defendants.

## VI.  CLAIMS

### Claim 1:  Violation of Computer Fraud and Abuse Act, 18 USC §1030(g) Against All Defendants

1. Intermarine incorporates the preceding paragraphs herein.

2. On or around July 29, 2013, Intermarine learned that Bihlet was working for the Spliethoff defendants, and that Bihlet and Branting had disclosed Intermarine's confidential and proprietary business information and trade secrets, including information stored electronically on its protected computers.

3. Intermarine conducted an investigation and damage assessment, which included sending the protected computers which had been used by Bihlet and Branting, and Intermarine ip address emails, to an outside vendor for a forensic evaluation, at considerable cost and expense, and causing an interruption in service for those computers.

4. As a result of these activities, Intermarine altered its policies and procedures with regard to computers and equipment following the departure of

8

certain employers.

5. The investigation and policy revisions required Intermarine's executives, managers and information technology professionals to spend many hours of valuable time away from day-to-day responsibilities.

6. Intermarine's investigation determined that Bihlet and Branting had accessed its protected computer(s) and/or computer system without authorization or exceeding their authorization, and had obtained Intermarine's electronically stored information, including its confidential and proprietary business information and trade secrets.

7. On information and belief, Bihlet and Branting acted as the agent(s) of the Spliethoff defendants, and/or with the support and encouragement of the Spliethoff defendants, in carrying out these activities.

8. On information and belief, Bihlet acted as Spliethoff's agent in encouraging and assisting Branting in carrying out these activities.

9. Intermarine's reasonable costs for responding to the offense, including conducting a damage assessment, and restoring its computer(s) and computer system to their condition prior to the offense, and other consequential damages have exceeded $5,000 from July 29, 2013, to the date of filing this complaint.

10. Intermarine asks that the Court enjoin defendants from further use of its confidential and proprietary business information and trade secrets which was stored electronically on its protected computer(s).

### Claim 2:  Breach of Contract
### Against Bihlet

11. Intermarine incorporates the preceding paragraphs herein.

12. The Agreement is a valid and enforceable contract.  Its provisions are reasonable, valid and tailored to reasonably protect Intermarine's confidential information, customer contacts, customer relationships, and goodwill, and do not unreasonably restrain Bihlet.

13. Intermarine is a proper party to sue for breach of the Agreement.

14. Intermarine has performed each obligation and condition required of it under the Agreement.

15. Bihlet has violated the Agreement by (1) working for and/or on behalf of Spliethoff in violation of his exclusive employment and non-compete agreements with Intermarine, (2) soliciting and intending to take away one or more Intermarine employee(s) or assisting Spliethoff in soliciting one or more Intermarine employee(s), (3) soliciting and intending to take away one or more Intermarine customer(s) or assisting Spliethoff in soliciting one or more Intermarine customer(s), (4) accessing Intermarine's protected computer(s) without authorization or exceeding his authorization to obtain electronically stored information from Intermarine's protected computer(s), and (5) disclosing Intermarine's valuable confidential and proprietary business information and trade secrets.

16. Intermarine has suffered damages as a direct result of Bihlet's breach, including damages to its business expectancies and goodwill, loss of customers, profits, market share, confidential and proprietary business information and trade secrets, as well as attorneys' fees, expenses and court costs, and other damages in an amount to be determined at trial.

17. Intermarine is also entitled under the Agreement to recover the salary it paid Bihlet and the medical benefits it provided him during the ninety-day notice period, and during the six-month restriction period. These damages exceed $150,000.

18. Intermarine is entitled to an award of attorney's fees under Tex.Civ.Prac. & Rem. Code § 38.001(8).

19. Intermarine asks that the Court enjoin Bihlet from further breach of his contractual obligations.

### Claim 3: Tortious Interference with Contractual Relations Against Spliethoff-Amsterdam and Spliethoff-Americas

20. Intermarine incorporates the preceding paragraphs herein.

21. Spliethoff tortiously interfered with Bihlet's existing contract with Intermarine. Both Spliethoff defendants had actual knowledge of the Agreement, and willfully and intentionally interfered with it without justification.

22. As a proximate result of this interference, Intermarine has suffered lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

23. Both Spliethoff defendants acted with malicious intent and/or reckless indifference to Intermarine's rights, thereby entitling Intermarine to an award of punitive damages.

24. Intermarine asks that the Court enjoin the Spliethoff defendants from further interference with Intermarine's contractual relations with Bihlet.

### Claim 4:  Tortious Interference with Contractual Relations
### Against Spliethoff-Amsterdam and Spliethoff-Americas

25. Intermarine incorporates the preceding paragraphs herein.

26. Spliethoff tortiously interfered with Branting's existing contract with Intermarine. Both Spliethoff defendants had actual knowledge of the contract, and willfully and intentionally interfered with it without justification.

27. As a proximate result of this interference, Intermarine has suffered lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

28. Both Spliethoff defendants acted with malicious intent and/or reckless indifference to Intermarine's rights, thereby entitling Intermarine to an award of punitive damages.

29. Intermarine asks that the Court enjoin the Spliethoff defendants from further interference with Intermarine's contractual relations with Bihlet.

### Claim 5:  Breach of Fiduciary Duties
### Against Bihlet

30. Intermarine incorporates the preceding paragraphs herein.

31. A fiduciary relationship existed between Bihlet and Intermarine based on Bihlet's appointment and service as an officer of Intermarine. As an employee, Bihlet owed Intermarine duties of loyalty and due care.

32. Bihlet breached his fiduciary duties to Intermarine by engaging in the conduct described above on behalf of or for the benefit of the Spliethoff defendants during his service as an officer and employee of Intermarine.

33. Bihlet's breach of his fiduciary duties proximately caused damage to Intermarine in an amount to be determined at trial. Alternatively, Bihlet benefited from the breach of his fiduciary duties which entitles Intermarine to an order that Bihlet disgorge all fees, compensation, or other benefits received from Spliethoff Amsterdam and/or Spliethoff Americas through the date of trial.

34. Intermarine asks that the Court enjoin Bihlet from further breach of his fiduciary duties.

### Claim 6: Aiding and Abetting Breach of Fiduciary Duty Against Spliethoff-Amsterdam and Spliethoff-Americas

35. Intermarine incorporates the preceding paragraphs herein.

36. A fiduciary relationship existed between Bihlet and Intermarine based on Bihlet's appointment and service as an officer of Intermarine. As an employee, Bihlet also owed Intermarine duties of loyalty and due care.

37. A fiduciary relationship existed between Branting and Intermarine based on Branting's appointment and service as an officer of Intermarine. As an employee, Branting also owed Intermarine duties of loyalty and due care.

38. Spliethoff Amsterdam and Spliethoff Americas each had actual knowledge of these relationships and duties.

39. The Spliethoff defendants intentionally and repeatedly requested that Bihlet and Branting breach such duties, and assisted and encouraged Bihlet and Branting to breach such duties, both during and after their active employment with Intermarine, all to the detriment of Intermarine and to the benefit of Spliethoff Amsterdam and Spliethoff Americas.

40. The Spliethoff defendants acted intentionally and maliciously, which entitles Intermarine to an award of punitive damages.

41. Such conduct on the part of Spliethoff Amsterdam and Spliethoff Americas proximately caused damage to Intermarine in an amount to be

12

determined at trial, including actual loss to Intermarine, punitive damages, attorney's fees and costs, and interest.

42. Intermarine asks that the Court enjoin the Spliethoff defendants from further aiding and abetting of Bihlet's and Branting's breach of fiduciary duties to Intermarine.

### Claim 7: Misappropriation of Confidential and Proprietary Business Information and Trade Secrets Against Bihlet

43. Intermarine incorporates the preceding paragraphs herein.

44. Intermarine is the owner of certain confidential and proprietary business information trade secrets, which it has invested considerable time and financial resources to develop and protect.

45. Bihlet acquired such confidential and proprietary business information and trade secrets in the course of his employment with Intermarine.

46. During and after his employment with Intermarine, Bihlet owed Intermarine contractual and common law duties not to disclose or use Intermarine's confidential and proprietary business information and trade secrets.

47. Despite these duties, Bihlet repeatedly used and/or disclosed confidential and proprietary business information and trade secrets belonging to Intermarine. Bihlet used and/or disclosed said confidential and proprietary business information and trade secrets to Intermarine's detriment, in violation of the Agreement and his confidential relationship with Intermarine.

48. By using Intermarine's confidential and proprietary business information and trade secrets, Bihlet misappropriated and unlawfully used such information.

49. On information and belief, Bihlet acted with the support and encouragement of the Spliethoff defendants in carrying out these activities.

50. Bihlet acted intentionally and maliciously, which entitles Intermarine to an award of punitive damages under the Texas Uniform Trade Secrets Act and under common law.

51. Bihlet is liable to Intermarine in an amount to be determined at trial, including actual loss to Intermarine, punitive damages, unjust enrichment to defendants, a reasonable royalty, attorney's fees and costs, and interest.

52. Intermarine asks that the Court enjoin Bihlet from further misappropriation of its trade secrets.

### Claim 8: Misappropriation of Confidential and Proprietary Business Information and Trade Secrets Against Spliethoff Amsterdam and Spliethoff Americas

53. Intermarine incorporates the preceding paragraphs herein.

54. Spliethoff Amsterdam and Spliethoff Americas have repeatedly used confidential and proprietary business information and trade secrets belonging to Intermarine which they acquired by improper means and without Intermarine's authorization. By using Intermarine's confidential and proprietary business information and trade secrets in this manner, Spliethoff Amsterdam and Spliethoff Americas misappropriated and unlawfully used such information.

55. Spliethoff Amsterdam and Spliethoff Americas acted intentionally and maliciously, which entitles Intermarine to an award of punitive damages under the Texas Uniform Trade Secrets Act and under common law.

56. Spliethoff Americas and Spliethoff Amsterdam are liable to Intermarine in an amount to be determined at trial, including actual loss to Intermarine, punitive damages, unjust enrichment to defendants, a reasonable royalty, attorney's fees and costs, and interest.

57. Intermarine asks that the Court enjoin the Spliethoff defendants from further misappropriation of its confidential and proprietary business information and trade secrets.

### Claim 9: Tortious Interference with Prospective Relations Against All Defendants

58. Intermarine incorporates the preceding paragraphs herein.

59. As of March 28, 2013, Intermarine had a continuing business relationship with various customers and a reasonable expectation that it would maintain these relationships from year to year.

60. Bihlet, Spliethoff Amsterdam and Spliethoff Americas had actual knowledge of these relationships.

61. Bihlet, Spliethoff Amsterdam and Spliethoff Americas intentionally interfered with these relationships without justification.

62. As a proximate result of this intentional interference, Intermarine has suffered lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

63. Bihlet, Spliethoff Amsterdam and Spliethoff Americas acted with malicious intent and/or reckless indifference to plaintiff's rights, thereby entitling Intermarine to an award of punitive damages.

64. Intermarine asks that the Court enjoin Bihlet, Spliethoff Amsterdam and Spliethoff Americas from further interference with its prospective relations.

### Claim 10: Texas Theft Liability Act
### Against All Defendants

65. Intermarine incorporates the preceding paragraphs herein.

66. Intermarine had a possessory right to its trade secrets and confidential and proprietary business information.

67. Defendants unlawfully appropriated said trade secrets and confidential and proprietary business information in violation of the Texas Penal Code.

68. As a proximate result of said unlawful appropriation, Intermarine has suffered lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

69. Bihlet, Spliethoff Amsterdam and Spliethoff Americas acted with malicious intent and/or reckless indifference to plaintiff's rights, thereby entitling Intermarine to an award of punitive damages.

70. Intermarine is entitled to an award of attorney's fees.

71. Intermarine asks that the Court enjoin Bihlet, Spliethoff Amsterdam and Spliethoff Americas from further use of said confidential information.

### Claim 11: Civil Conspiracy
### Against All Defendants

72. Intermarine incorporates the preceding paragraphs herein.

73. Spliethoff Amsterdam, Spliethoff Americas and Bihlet combined to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.

74. These defendants engaged in a civil conspiracy to misappropriate Intermarine's confidential and proprietary business information and trade secrets, including information stored electronically on Intermarine's protected computer(s), and to tortiously interfere with Intermarine's contractual relations and prospective business relationships, which has proximately caused injury to Intermarine.

75. As a proximate result of this civil conspiracy, Intermarine has suffered lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

76. Defendants acted with malicious intent and/or reckless indifference to Intermarine's rights, thereby entitling Intermarine to an award of punitive damages.

77. Intermarine asks that the Court enjoin the three defendants from engaging further in their illegal conspiracy.

### V. PRAYER FOR RELIEF

WHEREFORE, Intermarine, LLC respectfully requests and prays that the Court enter judgment:

(a) placing a constructive trust on all amounts received by Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet through the unlawful conduct outlined above;

(b) preliminarily and permanently enjoining Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet from continuing to engage in such unlawful behavior;

(c) directing Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet to return to Intermarine, LLC any and all property in his or their actual or constructive possession which rightfully belongs to plaintiff;

(d) awarding compensatory and consequential damages against Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet in an amount to be proven at trial;

(e) awarding exemplary and punitive damages against Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc., and Kasper Bihlet;

(f) awarding attorneys' fees, expenses, and costs of this action against Spliethoff Bevrachtingskantoor B.V., Spliethoff Americas, Inc.; and Kasper Bihlet; and

(g) directing such other relief as the Court deems just and proper.

/s/Cecily L. Kaffer
**Cecily L. Kaffer**
pro hac vice pending

The Kullman Firm
A Professional Law Corporation

Post Office Box 1287
Mobile, Alabama 36633
Telephone:  (251) 432-1811
 Facsimile:    (251) 433-1230
clk@kullmanlaw.com

ATTORNEY FOR PLAINTIFF
INTERMARINE, LLC

OF COUNSEL:

SAMUEL ZURIK, III
Texas Bar No. LA24716

The Kullman Firm
A Professional Law Corporation

Post Office Box 60118
New Orleans, LA 70160
Telephone:  (504) 524-4162
sz@kullmanlaw.com

Plaintiff will serve Defendants Spliethoff Americas, Inc., and Kasper Bihlet by private process server as follows:

Spliethoff Americas, Inc.
Registered Agent
William A Durham
808 Travis Street, Suite 1300
Houston, TX 77002 USA

Kasper Bihlet
5617 Willers Way
Houston, TX 77056

Plaintiff has requested that defendant Spliethoff Bevrachtingskantoor B.V., waive service of process pursuant to Rule 4(d), *Fed.R.Civ.P.*