## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **INTERMARINE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:14-cv-00145** |
| | § | |
| **SPLIETHOFF** | § | |
| **BEVRACHTINGSKANTOOR B.V.,** | § | |
| **SPLIETHOFF AMERICAS, INC.,** | § | |
| **and KASPER BIHLET,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## DEFENDANT KASPER BIHLET'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Daniel W. Jackson, SBN 00796817
The Jackson Law Firm
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax

Attorney-in-charge for Kasper Bihlet

**OF COUNSEL:**

The Jackson Law Firm
Burton G. Manne, SBN 12937900
S.D. of Texas No. 8820
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
burton@jacksonlaw-tx.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................iii

I.   NATURE AND STAGE OF PROCEEDINGS ........................................................ 2

II.  ISSUES TO BE RULED ON AND STANDARD OF REVIEW ............................... 3

III. BACKGROUND FACTS...................................................................................... 4

IV. ARGUMENT AND AUTHORITIES ...................................................................... 6

    A.   Intermarine cannot prevail under the Computer Fraud and Abuse Act. ........ 6

        1.   Bihlet did not violate the CFAA. .......................................................... 7

        2.   Intermarine did not suffer a loss recognized under the CFAA. ............. 8

    B.   Intermarine cannot prevail on its breach of contract claim. ........................ 10

        1.   Intermarine cannot recover for purported unauthorized disclosures
            under § 4.1 of the Agreement. ........................................................... 11

        2.   The non-compete provision in § 4.2 of the Agreement is
            unenforceable for multiple reasons. .................................................... 11

            a.   The non-compete is unenforceable because it does not
                contain a geographic restriction. .................................................. 11

        3.   Intermarine cannot prevail on its § 4.3 non-solicitation claim.............. 14

        4.   Intermarine cannot prevail on its § 4.4 non-solicitation claim.............. 14

    C.   Intermarine cannot prevail on its breach of fiduciary duty claim.................. 15

    D.   Intermarine cannot prove misappropriation of confidential or proprietary
        information or trade secrets. ....................................................................... 18

    E.   Intermarine cannot prove tortious interference with prospective
        relations..................................................................................................... 19

    F.   Intermarine cannot prove a violation of the Texas Theft Liability Act. ......... 21

    G.   Intermarine cannot prove a civil conspiracy. .............................................. 22

V.  CONCLUSION.................................................................................................. 23

CERTIFICATE OF SERVICE .................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................. 10

**United States Appellate Court Cases**

*Bazan ex rel. Bazan v. Hidalgo County*,
246 F.3d 481 (5th Cir. 2001) ...................................................................... 8

*Boudreaux v. Swift Transp. Co.*,
402 F.3d 536 (5th Cir. 2005) ...................................................................... 9

*Brown v. City of Houston*,
337 F.3d 539 (5th Cir. 1996) ...................................................................... 9

*Navigant Consulting, Inc. v. Wilkinson*,
508 F.3d 277 (5th Cir. 2007) .................................................................... 20

*Nexans Wires S.A. v. Sark–USA, Inc.*,
166 Fed.Appx. 559 (2nd Cir. 2006) ........................................................... 14

*Sheline v. Dun & Bradstreet Corp.*,
948 F.2d 174 (5th Cir. 1991) .................................................................... 18

*Taco Cabana Intern., Inc. v. Two Pesos, Inc.*,
932 F.2d 1113 (5th Cir. 1991) .................................................................. 23

*Taylor Pub. Co. v. Jostens, Inc.*,
216 F.3d 465 (5th Cir. 2000) .................................................................... 22

*United States v. John*,
597 F.3d 263 (5th Cir. 2010) .................................................................... 13

*Wellogix, Inc. v. Accenture, L.L.P.*,
716 F.3d 867 (5th Cir. 2013) .................................................................... 23

**United States District Court Cases**

*Absolute Energy Solutions, LLC v. Trosclair*,
No. CIV.A. H-13-3358, 2014 WL 360503 (S.D. Tex. Feb. 3, 2014) ............................ 12

*Alliantgroup, L.P. v. Feingold*,
   803 F. Supp. 2d 610 (S.D. Tex. 2011) .................................................................passim

*Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*,
   387 F. Supp. 2d 378 (S.D.N.Y. 2005) ................................................................. 14

*First Mortgage Corp. v. Baser*,
   2008 WL 4534124 (N.D. Ill. 2008) ..................................................................... 14

*Leath v. Tracer Const. Co.*,
   No. 1:08:-CV-358, 2009 WL 8188138 (E.D. Tex. Aug. 18, 2009) ............................. 18

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
   719 F. Supp. 2d 766 (S.D. Tex. 2010) ............................................................. 12, 14

*Taylor Pub. Co. v. Jostens, Inc.*,
   36 F. Supp. 2d 360, 374 (E.D. Tex. 1999) ............................................................ 22

**Texas Supreme Court Cases**

*Light v. Centel Cellular Co.*,
   883 S.W.2d 642 (Tex. 1994) ............................................................................ 16

*Marsh USA Inc. v. Cook*,
   354 S.W.3d 764 (Tex. 2011) ............................................................................ 19

*Tilton v. Marshall*,
   925 S.W.2d 672 (Tex. 1996) ............................................................................ 27

*Tri v. J.T.T.*,
   162 S.W.3d 552 (Tex. 2005) ............................................................................ 27

*Weatherford Oil Tool Co. v. Campbell*,
   340 S.W.2d 950 (Tex. 1960) ............................................................................ 17

**Texas Appellate Court Cases**

*Aguiar v. Segal*,
   167 S.W.3d 443 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ............................ 14

*Baty v. Protect Ins. Agency*,
   63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ........................ 24

*Cobb v. Caye Publishing Grp.*,
   322 S.W.3d 780 (Tex. App.—Fort Worth 2010, no pet.) ............................ 16

*Cukjati v. Burkett*,
   772 S.W.2d 215 (Tex. App.—Fort Worth 1989, writ dism'd) ...................................... 15

*Hunter Bldgs. & Mfg., L.P. v. MBI Global, L.L.C.*,
   436 S.W.3d 9 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) .............................. 22

*Jones v. Blume*,
   196 S.W.3d 440 (Tex. App.—Dallas 2006, pet. denied)............................................ 19

*Leon's Fine Foods, Inc. v. McClearin*,
   No. 05-97-00198-CV, 2000 WL 277135 (Tex. App.—Dallas Mar. 15, 2000, no pet.) 17

*Lockhart v. McCurley*,
   No. 10-09-00240-CV, 2010 WL 966029 (Tex. App.—Waco Mar. 10, 2010, no pet.) . 16

*Mandell v. Hamman Oil & Ref. Co.*,
   822 S.W.2d 153  (Tex. App.—Houston [1st Dist.] 1991, writ denied)........................ 14

*Martin v. Kidde Sales & Servs., Inc.*,
   496 S.W.2d 714 (Tex. Civ. App.—Waco 1973, no writ) ............................................ 16

*Tranter, Inc. v. Liss*,
   No. 02-13-00167-CV, 2014 WL 1257278
   (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) ....................................................... 18

## Statutory Authority

18 U.S.C. § 1030.................................................................................................... 10

18 U.S.C. § 1030 (a)(5) ......................................................................................... 11

18 U.S.C. § 1030(a)(2) ........................................................................................... 11

18 U.S.C. § 1030(a)(4) ........................................................................................... 11

18 U.S.C. § 1030(c)(4)(A)(i)(I)............................................................................. 12, 13

18 U.S.C. § 1030(g) ................................................................................................ 11

Tex. Bus. & Com. Code § 15.51(c) ........................................................................ 17

Tex. Bus. Com. Code § 15.50(a) ................................................................. 15

Tex. Civ. Prac. & Rem. Code § 134.005(a) ................................................. 25

Tex. Civ. Prac. & Rem. Code § 134A ......................................................... 23

Tex. Pen. Code § 31.03(a) ......................................................................... 25

Tex. Pen. Code § 31.03(b) ......................................................................... 25

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................... 7

Fed. R. Civ. P. 56(c) .................................................................................... 8

Fed. R. Civ. P. 56(e) .................................................................................... 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **INTERMARINE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:14-cv-00145** |
| | § | |
| **SPLIETHOFF** | § | |
| **BEVRACHTINGSKANTOOR B.V.,** | § | |
| **SPLIETHOFF AMERICAS, INC.,** | § | |
| **and KASPER BIHLET,** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANT KASPER BIHLET'S
### MOTION FOR SUMMARY JUDGMENT

Because plaintiff Intermarine, LLC cannot present competent summary judgment evidence establishing at least one element essential to each of its seven causes of action, and there are no genuine issues of material fact precluding summary judgment, defendant Kasper Bihlet requests that the Court grant summary judgment under Federal Rule of Civil Procedure 56.[1]

---

[1] On January 23, 2015, co-defendants Spliethoff Bevrachtingskantoor, B.V. and Spliethoff Americas, Inc. filed a motion for summary judgment and supporting exhibits, which are incorporated into this motion by reference.

## I.   <u>NATURE AND STAGE OF PROCEEDINGS</u>

1.     On August 13, 2013, plaintiff Intermarine, LLC filed suit against defendant Kasper Bihlet, in Case No. 4:13-cv-02360; *Intermarine, LLC v. Kasper Bihlet*; In the United States District Court for the Southern District of Texas, Houston Division.

2.     On September 6, 2013, the Court entered an order, consistent with the parties' agreement in open court on August 22, 2013, that:

> [U]ntil December 26, 2013, defendant Kasper Bihlet have no contact or communication whatsoever, directly or indirectly, including, but not limited to communications through his spouse, for any purpose, including business, employment, personal or otherwise, whether in person or by oral, written or electronic means, with Kyle Branting, Thomas Damsgaard, or any other employee of Spliethoff Americas, Inc., the Spliethoff Group, Spliethoff Bevrachtingskantoor, B.V., or any of its parents, affiliates, subsidiaries, or other related entitles.

Declaration of Daniel W. Jackson, verified exhibit 2.

3.     Then, after engaging in relatively extensive written discovery[2] and deposing Bihlet for seven (7) full hours, on January 21, 2014, Intermarine dismissed Case No. 4:13-cv-02360.

4.     On January 21, 2014, Intermarine refiled the litigation against Bihlet, but this time included Spliethoff Bevrachtingskantoor, B.V. and Spliethoff Americas, Inc. The latest round of litigation was assigned Case No. 4:14-cv-00145 and, on March 27, 2014, was transferred, by agreement of the parties, back to this Court. (Doc. #17).

5.     Since that time, the parties have engaged in extensive discovery, including the production of hundreds of thousands of pages of documents and deposing in excess of twenty witnesses.

---

[2]   Mr. Bihlet produced 2,289 pages of documents and Intermarine produced 541 pages.

6.      After litigating this matter for 17 months, on December 19, 2014 – the last day of discovery – Intermarine filed a motion to modify the scheduling and docket control order, requesting that the Court extend the discovery deadline until April 20, 2015 and further delaying the trial of this matter.

## II.      ISSUES TO BE RULED ON AND STANDARD OF REVIEW

7.      In plaintiff's original complaint (Doc. #1), Intermarine asserted seven (7) causes of action against Bihlet:  (1) violation of the Computer Fraud and Abuse Act; (2) breach of contract; (3) breach of fiduciary duty; (4) misappropriation of confidential and proprietary business information and trade secrets; (5) tortious interference with prospective relations; (6) violation of the Texas Theft Liability Act; and (7) civil conspiracy.

8.      Based on the competent summary judgment evidence presented in connection with this motion, consisting of declarations, deposition testimony, and documents produced in this matter, and Intermarine's inability to present competent summary judgment evidence establishing at least one essential element in each of the seven causes of action, summary judgment is required.

9.      Rule 56(c) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is '*material*' if it might affect the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted).

10.     The party moving for summary judgment must initially "'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  Upon the filing of a proper motion for summary judgment, the burden shifts to the non-movant to proffer affirmative evidence showing the existence of a genuine issue of fact in order to avoid summary judgment.  Fed. R. Civ. P. 56(c), (e).

11.     "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 1996).  Summary judgment is mandated if the non-movant fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    **BACKGROUND FACTS**

12.     In 1994, defendant Kasper Bihlet began working in the global marine shipping industry.  In 2001, after 7 years of learning the global marine shipping industry, Bihlet began working for Scan-Trans, Inc.  Declaration of Kasper Bihlet, ¶ 3.

13.     In August 2012, after 18 years in the global marine shipping industry, Bihlet's employer, Scan-Trans, was purchased by plaintiff Intermarine, LLC.  Bihlet Decl., ¶ 4.

14.     As a result of this acquisition, on September 27, 2012, Bihlet was required to execute an employment agreement (the "Agreement"), which, as it turned out, contains fatally overbroad non-compete and non-solicitation provisions.  Bihlet Decl., ¶ 4 and verified exhibit 1.

15.     Following the merger, Scan-Trans became Intermarine's Worldwide Group, and Bihlet became Vice President of the Chartering Americas department of the Worldwide Group.  Bihlet Decl., ¶ 7.

16.     Although he was given a new title, Bihlet was virtually performing the same duties as he had for Scan-Trans:  managing a small group of employees made up mostly of his former Scan-Trans group, and calculating and contracting specialty marine cargo bids exactly as he had for Scan-Trans, even using the exact same fleet of (formerly Scan-Trans) vessels.[3]  Bihlet Decl.,¶¶ 7, 8.

17.     During the course of his employment with Intermarine, Bihlet was not involved with shipping cargo to every port in the world.   In fact, the following are but a few of the ports Bihlet was in no way involved with (did not ship anything to or from) while employed by Intermarine:  (1) Lorient, France; (2) Oslo, Norway; (3) Alesund, Norway; (4) Conception Harbour, Canada; (5) Puri, India; and (6) Arkhangelsk, Russia.  Bihlet Decl., ¶ 11.

18.     On March 19, 2013, Bihlet accepted employment with defendant Spliethoff Americas, Inc., effective upon his release by Intermarine.  Bihlet Decl., ¶ 13.

19.     Bihlet resigned from his employment with Intermarine on March 28, 2013. For the next 90 days, Intermarine paid Bihlet his base salary and continued to provide medical benefits, respectively defined under the Agreement as "Severance" and "Benefit Continuation."  Bihlet Decl., ¶ 14.

---

[3]     For purposes of this motion, Bihlet does not dispute Intermarine's contention that he was provided with confidential and/or proprietary information.

20.     Kyle Branting, who has not been named as a defendant in this litigation, resigned his employment with Intermarine on April 17, 2013.  Bihlet Decl., ¶ 15.

21.     On June 26, 2013, the 90-day notice period under the Agreement expired, thereby making Bihlet's resignation from Intermarine effective.   From June 26, 2013 through December 26, 2013, defined under the Agreement as the "Restriction Period," Bihlet was paid his base salary, but was not provided with medical benefits.   Bihlet Decl., ¶ 16.

22.     As previously noted, on August 13, 2013, Intermarine filed suit against Bihlet, in Case No. 4:13-cv-02360.  On August 22, 2013, Intermarine and Bihlet, for all intense purposes, agreed to a temporary injunction, which was incorporated into an agreed order and entered by the Court on September 6, 2013.  Jackson Decl., verified exhibit 2.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Intermarine cannot prevail under the Computer Fraud and Abuse Act.

23.     Intermarine asserts that Bihlet violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et al.*, by obtaining information from Intermarine's protected computer by intentional accessing the computer without, or in excess of his, authorization to do so, resulting in more than $5.000 in damages [Doc. #1, page 6, ¶ 32; page 9, ¶¶ 6, 9].[4]

---

[4]   Although not specifically pled by Intermarine, the only seemingly applicable CFAA violation is 18 U.S.C. § 1030(a)(2)(C), which states:  "(a) Whoever-- … (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains-- … (C) information from any protected computer; … shall be punished as provided in subsection (c) of this section."

24.     The CFAA, while primarily a criminal statute, provides a private right of action:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).[5]

18 U.S.C. § 1030(g).

25.     Accordingly, to recover under 18 U.S.C. § 1030(a)(2), Intermarine must prove Bihlet:

> (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information, (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*Absolute Energy Solutions, LLC v. Trosclair*, No. CIV.A. H-13-3358, 2014 WL 360503, at *2 (S.D. Tex. Feb. 3, 2014).

### 1.     Bihlet did not violate the CFAA.

26.     "The CFAA prohibits unauthorized access to a 'protected computer' for purposes of obtaining information, causing damage, or perpetrating fraud." *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 629 (S.D. Tex. 2011) (citing *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 774 (S.D. Tex. 2010) (citing 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5))).

---

[5]     Although not specifically plead by Intermarine, the only seemingly applicable CFAA violation is 18 U.S.C. § 1030(c)(4)(A)(i)(I), which states: "(I) loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value."

27.     However, because the CFAA does not address and does not prohibit misuse or unauthorized disclosure of information, violation of a confidentiality agreement is not in and of itself a violation of the CFAA.  *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010).

28.     In this matter, there is no evidence that Bihlet has ever (1) accessed an Intermarine computer without authorization, or (2) exceeded his authorized access.

29.     In fact, Mr. William Curtin, Intermarine's Vice President of IT, testified as a corporate representative that he had no evidence that Bihlet accessed computers without authority or exceeded his authority.  Jackson Decl., verified exhibit 3 (Curtin Depo. 55:9 – 57:11).

30.     And, Intermarine has not produced any evidence to support its allegation that Bihlet improperly shared information he obtained from Intermarine with Spliethoff.

31.     Because there is no evidence Bihlet accessed an Intermarine computer without authorization or exceeded his authorization by improperly sharing information with Spliethoff, the Court should grant Bihlet's summary judgment regarding Intermarine's CFAA cause of action.

### 2.     Intermarine did not suffer a loss recognized under the CFAA.

32.     Even if Intermarine can show it meets all other elements of a CFAA cause of action, Intermarine has not suffered a loss recognized under the CFAA.

33.     To prove a CFAA cause of action, Intermarine must prove it suffered a "loss … during any 1-year period … aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also Feingold*, 803 F. Supp. 2d at 629.

34.     The CFAA defines "loss" as:

> ... any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service; ...

18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also Feingold*, 803 F. Supp. 2d at 629.

35.     In *Feingold*, this Court held that "[t]he term 'loss' encompasses only two types of harm: costs to investigate and respond to an offense, and costs incurred because of a service interruption." *Feingold*, 803 F. Supp. 2d at 630 (citing *Godlevsky*, 719 F. Supp. 2d at 776–77).

36.     As in *Feingold*, where this Court granted the defendant summary judgment, Intermarine:

> does not allege or present evidence of any cognizable losses.  It does not allege an interruption of services as a result of [Bihlet's] actions, or any costs incurred to investigate and respond to an interruptions or any service interruption.

*Feingold*, 803 F. Supp. 2d at 630.  *See also First Mortgage Corp. v. Baser*, 2008 WL 4534124, at *3 (N.D. Ill. 2008) (Plaintiffs injury was not a "loss" under the CFAA because it was not "the result of the impairment or unavailability of data on the computer."); *Nexans Wires S.A. v. Sark–USA, Inc.*, 166 Fed.Appx. 559, 562-63 (2nd Cir. 2006) ("Because it is undisputed that no interruption of service occurred in this case, L&K's asserted loss of $10 million is not a cognizable loss under the CFAA."); *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("Costs not related to computer impairment or computer damages are not compensable under the CFAA.").

37.     Intermarine, through its corporate representative and vice president for IT, admits that there was no interruption in services to Intermarine's computer system. Jackson Decl., verified exhibit 3 (Curtin depo. 70:4-8).

38.     And, Intermarine's computer forensic expert's report states that after Bihlet left Intermarine his computer was cleaned out and assigned to another user, without any suggestion of any service interruption.   *See* Spliethoff motion for summary judgment, exhibit 18.

39.     Finally, because there is no evidence that Bihlet accessed a protected computer without authority, Intermarine cannot present evidence of at least $5,000 in economic damages required to investigate and respond to an unauthorized access of a protected computer.

40.     Because there is no evidence Intermarine suffered a loss recognized by the CFAA, the Court should grant Bihlet's summary judgment regarding Intermarine's CFAA cause of action.

**B.     Intermarine cannot prevail on its breach of contract claim.**

41.     Under Texas law, Intermarine must prove the following elements to prevail on a breach of contract claim:    (1) there was a valid, enforceable contract; (2) Intermarine performed, tendered performance, or was excused from performing its contractual obligations; (3) Bihlet breached the contract; and (4) Intermarine suffered damages as a result of Bihlet's breach.   *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

**1.    Intermarine cannot recover for purported unauthorized disclosures under § 4.1 of the Agreement.**

42.    To prevail on its claim that Bihlet breached section 4.1 of the Agreement, it is axiomatic that Intermarine must present competent summary judgment evidence establishing that it suffered damages and the amount of such damages.

43.    After 17 months of litigation and hundreds of thousands of dollars spent, Intermarine still cannot present any evidence establishing that it suffered damages and the amount of such damages as a result of an alleged unauthorized disclosure.

44.    Therefore, the Court should grant summary judgment as to Intermarine's claim that Bihlet breached section 4.1 of the Agreement.

**2.    The non-compete provision in § 4.2 of the Agreement is unenforceable for multiple reasons.**

45.    The enforceability of a non-compete provision is a question of law.  *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex. 1994).  Section 15.50 of the Texas Business and Commerce Code requires that, in order to be enforceable, a non-compete provision must contain "limitations as to time, geographical area, and scope of activity that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of [Intermarine]."   Tex. Bus. Com. Code § 15.50(a).

**a.    The non-compete is unenforceable because it does not contain a geographic restriction.**

46.    A geographical restriction that goes beyond the general boundaries in which the employer's business operates is unreasonable.  *Cukjati v. Burkett*, 772 S.W.2d 215, 218 (Tex. App.—Fort Worth 1989, writ dism'd).  Generally, the restricted

area must not be broader than the area in which the employee worked. *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952 (Tex. 1960); *Cobb v. Caye Publishing Grp.*, 322 S.W.3d 780, 783–85 (Tex. App.—Fort Worth 2010, no pet.).

47.     Texas law is clear and well established that:

> The restrictive covenant must bear some relation to the activities of the employee.  It must not restrain his activities in a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his employer.

*Martin v. Kidde Sales & Servs., Inc.*, 496 S.W.2d 714, 718 (Tex. Civ. App.—Waco 1973, no writ) (quoting *Weatherford Oil Tool Co.*, 340 S.W.2d at 952).

48.     The non-compete in the instant case is unreasonable and unenforceable on its face because it contains no geographical restriction[6]:

> Section 4.2 – Non-Competition: for six (6) months following termination of the Agreement (defined as the "**Restriction Period**"), Bihlet could not, directly or indirectly, own, manage, operate, join, control, be employed by, or participate in the ownership, management, operation or control of … any person that "is engaged, directly or indirectly, in (or intends or proposes to engage in, or has been organized for the purpose of engaging in blue water shipping of heavy-lift cargo, irregularly shaped cargo, project cargo ad break-bulk cargo **anywhere in the world.**"   During the **Restriction Period,** Intermarine shall pay Bihlet his salary.

Bihlet Decl., verified exhibit 1.

49.     Ordinarily, when a non-compete provision contains an unreasonable geographic restriction (or no geographic restriction), "the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to . . .

---

[6]   Non-compete provisions without explicit geographic limitations have been upheld in instances where other clauses provide adequate limitations, such as when the employee is restricted from contacting specific clients.  *See, e.g., Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *2 (Tex. App.—Waco Mar. 10, 2010, no pet.).  There is no such other limiting clause in the non-compete provision at issue that would make up for its lack of a geographical restriction; hence, the non-compete provision is unenforceable as written.

geographical area . . . to be restrained to be reasonable and . . . enforce the covenant as reformed ….”  Tex. Bus. & Com. Code § 15.51(c).[7]

50.    However, the duration of the non-compete provision was six months following termination of Bihlet’s employment, which was December 26, 2013. “Consequently, reformation of the covenant would be a futile exercise because prospective injunctive relief is not available and any changes would be inoperative.” *Leath v. Tracer Const. Co.*, No. 1:08:-CV-358, 2009 WL 8188138, at *7 (E.D. Tex. Aug. 18, 2009) (citations omitted).   As the Eastern District did in *Leath*, the Court should decline to exercise the remedy of reformation.  *Id.*; *see also Leon’s Fine Foods, Inc. v. McClearin*, No. 05-97-00198-CV, 2000 WL 277135, at *1 (Tex. App.—Dallas Mar. 15, 2000, no pet.) (“Once the non-competition period ends, the trial court’s ability to enforce the covenant by injunction becomes moot.”).

51.    Moreover, it is unnecessary to reform the non-compete provision for the purpose of determining damages because Intermarine is not entitled to damages on a non-compete provision that is unenforceable as written.   “It is well settled that for purposes of an action for damages, the enforceability of the covenant not to compete will be determined as written and may not be modified to make it reasonable and unenforceable.”  *Leath*, 2009 WL 8188138, at *7 (quoting *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 178 (5th Cir. 1991)).

---

[7]    If reformation of the non-compete provision occurs, “the court may not award [Intermarine] damages for a breach of the covenant before its reformation and the relief granted to [Intermarine] shall be limited to injunctive relief.”  Tex. Bus. & Com. Code § 15.51(c).

52.     Because the non-compete provision at issue is unenforceable as written, Intermarine is precluded from recovering damages on its breach of contract claim against Bihlet.  *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *5 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (citations omitted).

### 3.     Intermarine cannot prevail on its § 4.3 non-solicitation claim.

53.     The non-solicitation provision in section § 4.3 of the Agreement precludes the solicitation of Intermarine employees during "the Restriction Period," which was from June 26, 2013 through December 26, 2013.

54.     Bihlet did not solicit or assist any person in soliciting any Intermarine employee, mush less during the Restriction Period.  To the extent Intermarine contends that Bihlet solicited or assisted in soliciting Kyle Branting, the undisputed facts belie such contention.

55.     Kyle Branting resigned his employment with Intermarine on April 17, 2013 (Bihlet Decl., ¶ 15), which was not within the Restriction Period.  Therefore, Intermarine cannot present any evidence at to breach of § 4.3 of the Agreement.

### 4.     Intermarine cannot prevail on its § 4.4 non-solicitation claim.

56.     "Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act."  *Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 768 (Tex. 2011).

57.     Intermarine, through its designated corporate representative, Chad Call, admitted that the non-solicitation provisions in § 4.4 are overbroad in that they restrict

Bihlet from calling on Intermarine's customers and clients, and the customers and clients of its affiliates, with whom Bihlet had absolutely no contact or interaction. Jackson Decl., verified exhibits 4 and 5 (Call Depo. 54:2-22).

58.     Therefore, § 4.4 is, as a matter of law, overbroad and unenforceable.  For the reasons set out in paragraphs 46-53, the Court should neither reform nor enforce § 4.4 of the Agreement.

      **C.**     **Intermarine cannot prevail on its breach
of fiduciary duty claim.**

59.     Intermarine alleges that Bihlet breached his fiduciary duties to Intermarine by accessing, appropriating, and disclosing Intermarine's confidential and proprietary information and trade secrets, soliciting Intermarine's customers, and providing services to Spliethoff Americas and Spliethoff Amsterdam.  Dkt. No. 1 at 6-7, ¶¶ 32-33.  In other words, Intermarine alleges that Bihlet breached the exclusivity, non-compete, non-disclosure, and non-solicitation provisions of the Agreement.  Dkt. No. 1 at 11-12, ¶¶ 30-34.

60.     Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached its fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).   "Whether a fiduciary duty exists is a question of law." *Feingold*, 803 F. Supp. 3d at 627.

61.     Although Bihlet adamantly denies that he breached any fiduciary duties owed to Intermarine, for the purposes of this motion, Bihlet specifically challenges Intermarine's ability to produce any evidence that Bihlet's alleged breach of fiduciary duty resulted in an injury to Intermarine or a benefit to Bihlet.   *See Feingold*, 803 F. Supp. 2d at 627.

62.     Specifically, even if Bihlet accessed, appropriated, and disclosed Intermarine's confidential and proprietary information and trade secrets, as Intermarine alleges, Intermarine cannot produce any evidence showing that it suffered injury as a result, or that Bihlet somehow benefited.

63.     Likewise, even if Bihlet provided services to Spliethoff and/or solicited Intermarine's customers during the Restriction Period (he did not), as Intermarine alleges, Intermarine cannot produce any evidence that it suffered injury as a result, or that Bihlet somehow benefited.

64.      Moreover, there is no evidence that Bihlet acted in any way designed to intentionally harm Intermarine.  *See id*. at 628.   Specifically, there is no evidence that: (1) Bihlet made disparaging remarks about Intermarine to any prospective customer or competitor; (2) Bihlet or Spliethoff gained any new customers or cargo because of Bihlet's alleged breach of fiduciary duty; and (3) any alleged breach by Bihlet caused any harm to Intermarine.

65.     Confronted with the fact that it was in no way harmed by Bihlet's alleged breach of fiduciary duty, Intermarine decided to get creative in order to advance an even remotely credible damage model.   In doing so, Intermarine seems to rely on the

flexibility afforded some breach of fiduciary duty claimants in cases when damages are difficult to prove.  The problem for Intermarine is that this flexible approach to damages does not excuse Intermarine from presenting evidence of causation – namely that Bihlet used the purported confidential and proprietary information and trade secrets to harm Intermarine or benefit himself.

66.     The Fifth Circuit addressed this exact issue in *Taylor Pub. Co. v. Jostens, Inc.*:

> We do not disagree that, because damages are difficult to prove in breach of fiduciary duty cases, litigants and courts must be flexible and imaginative in calculating the proper measure of damages.  However, as the district court noted, the fact that a flexible approach to the measurement of damages was necessary ***"does not excuse the need for [Taylor] to offer evidence that the information at issue was used by [Jostens] to obtain market share."***
>
> Taylor offered evidence that Jostens acquired confidential information and that, during a similar time frame, Jostens's market share increased and Taylor lost customers.  However, absent was any evidence to prove that Taylor's losses or Jostens gains were caused by Jostens's acquisition of confidential information.

216 F.3d 465, 487 (5th Cir. 2000) (internal citations omitted) (emphasis added) (quoting *Taylor Pub. Co. v. Jostens, Inc.*, 36 F. Supp. 2d 360, 374 (E.D. Tex. 1999)).

67.     Accordingly, no matter what damage model Intermarine puts forth, it must produce evidence that Bihlet's breach of fiduciary duty either caused it harm or benefited Bihlet.  Because it cannot do so, the Court should grant Bihlet's motion for summary judgment as to Intermarine's breach of fiduciary duty claim.

### D. Intermarine cannot prove misappropriation of confidential or proprietary information or trade secrets.

68.     To establish a trade secret misappropriation under Texas common law, the plaintiff must prove: "(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (4) damages."  *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991); *see also Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013).

69.     To recover lost profit damages on a misappropriation claim, "the plaintiff must produce evidence from which the jury reasonably may infer that the lost-profits damages for which recovery is sought have resulted from the conduct of the defendant." *Hunter Bldgs. & Mfg., L.P. v. MBI Global, L.L.C.*, 436 S.W.3d 9, 18 (Tex. App.—Houston [14th Dist.] 2014, pet. filed).

70.     "This requirement is met when a jury is presented with pleading and proof that establish a direct causal link between the lost-profits damages, the actions of the defendant, and the injury suffered." *Id.*

71.     Again, Bihlet expressly denies the existence of any trade secret or confidential and proprietary information that he discovered or obtained by improper means.  Bihlet further denies the alleged use of any such trade secret or information.

72.     Nevertheless, in the context of this motion, Bihlet specifically challenges Intermarine's ability to prove causation and damages.  As set out above, Intermarine cannot produce any evidence of harm caused by Bihlet's alleged misappropriation of Intermarine's trade secrets or confidential and proprietary information.

73.     Notably, Intermarine appears to assert a common law misappropriation claim against Bihlet; however, at the end of paragraph 50 in its complaint, it references, for the first and only time, the Texas Uniform Trade Secrets Act (the "Act").  Dkt. No. 1 at 13, ¶ 50.   To the extent Intermarine's misappropriation claim is brought, either exclusively or alternatively, under the Act, such claim fails because the Act does not apply:

> The change in law made by this Act applies to the misappropriation of a trade secret made on or after the effective date [Sept. 1, 2013] of this Act. A misappropriation of a trade secret made before and a continuing misappropriation beginning before the effective date of this Act are governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Tex. Civ. Prac. & Rem. Code § 134A (comments).

74.     In any event, even if the Act did apply, Intermarine would still have to prove causation and damages, which, as set out above, it cannot do.

75.     Accordingly, the Court should grant Bihlet's motion for summary judgment on Intermarine's misappropriation claim(s).

### E.     Intermarine cannot prove tortious interference with prospective relations.

76.     The elements of a claim for tortious interference with prospective relations are:

- a reasonable probability that the plaintiff would have entered into a business relationship;

- an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;

- the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference

> was certain or substantially certain to occur as a result of the conduct; and
>
> • the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Baty v. Protect Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

77.    Intermarine has no evidence that it had a reasonable probability of entering into a business relationship with any prospective business relation.  Jackson Decl., verified exhibit 5 (Call depo. 51:8–23; 73:24–74:10).

78.    Intermarine has no evidence that Bihlet committed any act that was independently tortious or unlawful that prevented the alleged prospective business relationship from occurring.   Again, Bihlet expressly denies any alleged use of any confidential information or trade secret, much less an improper use to prevent any prospective relation from occurring.

79.    Intermarine has no evidence that Bihlet committed any such alleged act with a conscious desire to prevent a prospective business relationship from occurring or that Bihlet knew the interference was certain or substantially certain to occur as a result of the conduct.  In fact, Intermarine's corporate representative did not even know if any of its alleged confidential information was even used by Bihlet.  Jackson Decl., verified exhibit 6 (Stanley depo. 72:3–8; 75:1–21).

80.    Intermarine has no evidence that it suffered actual harm or damages as a result of Bihlet's alleged interference.   Jackson Decl., verified exhibit 5 (Call depo. 74:11–16).   In fact, Intermarine's witness testified that revenue has been higher since Bihlet left Intermarine.  Jackson Decl., verified exhibit 7 (Koch depo. 28:13–19).

81.     Therefore, the Court should grant summary judgment in favor of Bihlet as to Intermarine's claim for tortious interference with prospective relations.

**F.      Intermarine cannot prove a violation of the Texas Theft Liability Act.**

82.     The elements of a Texas Theft Liability Act claim are:  (1) Intermarine had a possessory right to the property; (2) Bihlet unlawfully appropriated the property by taking it without the Intermarine's effective consent; (3) Bihlet appropriated the property with the intent to deprive Intermarine of the property; and (4) Intermarine sustained damages as a result of the theft.   Tex. Pen. Code § 31.03(a), (b); Tex. Civ. Prac. & Rem. Code § 134.005(a).

83.     Intermarine has no evidence that Bihlet unlawfully appropriated property by taking it without its effective consent.  Jackson Decl., verified exhibit 7 (Koch depo. 105:6–107:4; 121:9–123:2).   Again, Bihlet expressly denies the existence of any trade secret or confidential and proprietary information that he discovered or obtained by improper means.   Bihlet further denies the alleged use of any such trade secret or information.

84.     Intermarine has no evidence that Bihlet allegedly appropriated the property with the intent to deprive Intermarine of the property.   Intermarine's corporate representative had no knowledge as to whether any of its alleged confidential information was even used by Bihlet.  Jackson Decl., verified exhibit 6 (Stanley depo. 75:1–21).

85.     Most significantly, Intermarine has no evidence that it sustained damages as a result of Bihlet's alleged theft.  Jackson Decl., verified exhibits 5 and 6 (Call depo. 74:11–16; Stanley Dep., 70:11–71:8).

86.     Therefore, the Court should grant summary judgment in favor of Bihlet as to Intermarine's claim under the Texas Theft Liability Act.

**G.      Intermarine cannot prove a civil conspiracy.**

87.     The elements of a civil conspiracy claim include:   "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt act; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  Moreover, "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."   *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

88.     Intermarine alleges that Spliethoff and Bihlet conspired to:   "(1) misappropriate Intermarine's confidential and proprietary business information and trade secrets, including information stored electronically on Intermarine's protected computer(s); and (2) tortiously interfere with Intermarine's contractual relations and prospective business relationships, which proximately caused injury to Intermarine." Compl., at 16 ¶ 74, ECF No. 1.

89.     As detailed above, Intermarine has no evidence that Bihlet misappropriated any confidential information or trade secrets, or that he tortiously interfered with Intermarine's prospective business relations.  Therefore, in the absence

of an underlying claim, Intermarine's civil conspiracy claim fails. *Feingold*, 803 F. Supp. 2d at 630.

90.     Nevertheless, there is no evidence that Bihlet and Spliethoff conspired to misappropriate Intermarine's confidential information or tortiously interfere with Intermarine's prospective relations because Intermarine's corporate representative admitted that he did not know if or how Bihlet used any confidential information. Jackson Decl., verified exhibits 6 and 7 (Stanley depo. 72:3–8; 75:1–21; Koch depo. 105:6–107:4; 121:9–123:2).

91.     Lastly, Intermarine has no evidence that it suffered any damages as a result of any conspiracy to misappropriate confidential information or tortiously interfere with prospective relations.  Intermarine's own corporate representative testified that he did not know how he was damaged by any alleged unlawful act by Bihlet.  Jackson decl., verified exhibit 6 (Stanley depo. 70:16–72:2).

92.     Therefore, the Court should grant summary judgment in favor of Bihlet as to Intermarine's civil conspiracy claim.

## V.    CONCLUSION

93.     Because there are no genuine issues of material fact precluding summary judgment, defendant Kasper Bihlet requests that the Court grant summary judgment as to all claims asserted against him by plaintiff Intermarine LLC.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
daniel@jacksonlaw-tx.com

Attorney-in-charge for Kasper Bihlet

**OF COUNSEL:**

The Jackson Law Firm
Burton G. Manne, SBN 12937900
S.D. of Texas No. 8820
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
burton@jacksonlaw-tx.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document has been served on counsel of record through the federal court electronic filing system and email on January 23, 2015:

Cecily L. Kaffner
The Kullman Firm
P.O. Box 1287
Mobile, AL  36633

**Email:  clk@kullmanlaw.com**

William A. Durham
Eastham, Watson, Dale & Forney
808 Travis, Suite 1300
Houston, TX  77002

**Email:  durham@easthamlaw.com**

Samuel Zurik, III
The Kullman Firm
P.O. Box 60118
New Orleans, LA  70169

**Email:  sz@kullmanlaw.com**

/s/ *Daniel W. Jackson*
Daniel W. Jackson